**SHAFFY MOEEL**
California State Bar No. 238732
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, CA 92101-5008
(619) 234-8467/Fax: (619) 687-2666
E-Mail: shaffy_moeel@fd.org

Attorneys for Ricardo Lopez-Nava

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE M. JAMES LORENZ)**

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 08CR1028-L |
| Plaintiff, | DATE: March 17, 2008<br>TIME: 2:00 p.m. |
| v. | |
| RICARDO LOPEZ-NAVA, | **STATEMENT OF FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTIONS** |
| Defendant. | |

**I.**

**MOTION TO COMPEL DISCOVERY AND PRESERVE EVIDENCE**

Mr. Lopez-Nava moves for the production by the government of the following discovery and for the preservation of evidence. This request is not limited to those items about which the prosecutor knows, but includes all discovery listed below that is in the custody, control, care, or knowledge of any government agency. See generally Kyles v. Whitley, 514 U.S. 419 (1995); United States v. Bryan, 868 F.2d 1032 (9th Cir. 1989).

1. <u>The Defendant's Statements</u>. The government must disclose to Mr. Lopez-Nava *all* copies of any written or recorded statements made by Mr. Lopez-Nava; the substance of any statements made by Mr. Lopez-Nava that the government intends to offer in evidence at trial; any response by Mr. Lopez-Nava to interrogation; the substance of any oral statements that the government intends to introduce at trial and any written summaries of Mr. Lopez-Nava's oral statements contained in the handwritten notes of the government

agent; any response to any <u>Miranda</u> warnings that may have been given to Mr. Lopez-Nava; and any other statements by Mr. Lopez-Nava. FED. R. CRIM. P. 16(a)(1)(A) and (B). The Advisory Committee Notes and the 1991 amendments to Rule 16 make clear that the government must reveal *all* Mr. Lopez-Nava's statements, whether oral or written, regardless of whether the government intends to make any use of those statements.

    2.    <u>Arrest Reports, Notes and Dispatch Tapes</u>. Mr. Lopez-Nava also specifically requests that all arrest reports, notes and dispatch or any other tapes that relate to the circumstances surrounding her arrest or any questioning, if such reports have not already been produced *in their entirety*, be turned over to him. This request includes, but is not limited to, any rough notes, records, reports, transcripts or other documents in which statements of Mr. Lopez-Nava or any other discoverable material is contained. Mr. Lopez-Nava includes in this request any redacted portions of the Report of Investigation ("ROI") and any subsequent ROIs that the case agent or any other agent has written. This is all discoverable under FED. R. CRIM. P. 16(a)(1)(A) and (B) and <u>Brady v. Maryland</u>, 373 U.S. 83 (1963). <u>See also</u> <u>Loux v. United States</u>, 389 F.2d 911 (9th Cir. 1968). Arrest reports, investigator's notes, memos from arresting officers, dispatch tapes, sworn statements, and prosecution reports pertaining to Mr. Lopez-Nava are available under FED. R. CRIM. P. 16(a)(1)(A) and (B), FED. R. CRIM. P. 26.2 and 12(I). Preservation of rough notes is requested, whether or not the government deems them discoverable.

    3.    <u>Brady Material</u>. Mr. Lopez-Nava requests all documents, statements, agents' reports, and tangible evidence favorable to him on the issue of guilt and/or that affects the credibility of the government's case. Impeachment and exculpatory evidence both fall within <u>Brady's</u> definition of evidence favorable to the accused. <u>United States v. Bagley</u>, 473 U.S. 667 (1985); <u>United States v. Agurs</u>, 427 U.S. 97 (1976).

    4.    <u>Any Information That May Result in a Lower Sentence</u>. As discussed above, any information that may result in a more favorable sentence must also be disclosed pursuant to <u>Brady</u>, 373 U.S. 83. The government must disclose any cooperation or attempted cooperation by Mr. Lopez-Nava, as well as any information that could affect any base offense level or specific offense characteristic under Chapter Two of the United States Sentencing Commission Guidelines Manual ("Guidelines"). Also included in this request is any information relevant to a Chapter Three adjustment, a determination of Mr. Lopez-Nava's criminal history, or any other application of the Guidelines.

5. <u>The Defendant's Prior Record</u>. Evidence of a prior record is available under FED. R. CRIM. P. 16(a)(1)(D). Mr. Lopez-Nava specifically requests a complete copy of any criminal record.

6. <u>Any Proposed 404(b) Evidence</u>. Evidence of prior similar acts is discoverable under FED. R. CRIM. P. 16(a)(1)(D) and FED. R. EVID. 404(b) and 609. In addition, under FED. R. EVID. 404(b), "upon request of the accused, the prosecution . . . shall provide reasonable notice in advance of trial . . . of the general nature . . .." of any evidence the government proposes to introduce under FED. R. EVID. 404(b) at trial. Sufficient notice requires the government to "articulate *precisely* the evidential hypothesis by which a fact of consequence may be inferred from the other acts evidence." United States v. Mehrmanesh, 689 F.2d 822, 830 (9th Cir. 1982) (emphasis added; internal citations omitted); <u>see also</u> United States v. Brooke, 4 F.3d 1480, 1483 (9th Cir. 1993) (reaffirming <u>Mehrmanesh</u> and reversing convictions).

This includes any "TECS" records (records of prior border crossings) that the government intends to introduce at trial, whether in its case-in-chief, impeachment, or rebuttal. Although there is nothing intrinsically improper about prior border crossings, they are nonetheless subject to 404(b), as they are "other acts" evidence that the government must produce before trial. United States v. Vega, 188 F.3d 1150, 1154-55 (9th Cir. 1999). Mr. Lopez-Nava requests that such notice be given *three weeks before trial* to give the defense time to adequately investigate and prepare for trial.

7. <u>Evidence Seized</u>. Evidence seized as a result of any search, either warrantless or with a warrant, is discoverable under FED. R. CRIM. P. 16(a)(1)(E).

8. <u>Request for Preservation of Evidence</u>. The defense specifically requests that all dispatch tapes or any other physical evidence that may be destroyed, lost, or otherwise put out of the possession, custody, or care of the government and that relate to the arrest or the events leading to the arrest in this case be preserved. This request includes, but is not limited to, any samples of narcotics used to run any scientific tests, all narcotics, the results of any fingerprint analysis, the vehicle involved in the case, Mr. Lopez-Nava's personal effects, and any evidence seized from Mr. Lopez-Nava or any third party. This request also includes any material or percipient witnesses who might be deported or otherwise likely to become unavailable (<u>e.g.</u>, undocumented aliens and transients).

1    It is requested that the prosecutor be ordered to *question* all the agencies and individuals involved in the prosecution and investigation of this case to determine if such evidence exists, and if it does exist, to inform those parties to preserve any such evidence.

9.    <u>Henthorn Material</u>.  Mr. Lopez-Nava requests that the Assistant United States Attorney ("AUSA") assigned to this case oversee (not personally conduct) a review of all personnel files of each agent involved in the present case for impeachment material.  See <u>Kyles v. Whitley</u>, 514 U.S. 419, 437-38 (1995) (holding that "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police"); <u>United States v. Henthorn</u>, 931 F.2d 29 (9th Cir. 1991).  This request includes, but is not limited to, any complaints filed (by a member of the public, by another agent, or any other person) against the agent, whether or not the investigating authority has taken any action, as well as any matter for which a disciplinary review was undertaken, whether or not any disciplinary action was ultimately recommended.  Mr. Lopez-Nava further requests production of any such information at least *one week* prior to the motion hearing and two weeks prior to trial.  If the prosecutor is uncertain whether certain information should be disclosed pursuant to this request, this information should be produced to the Court in advance of the motion hearing and the trial for an *in camera* inspection.

10.    <u>Tangible Objects</u>.  Mr. Lopez-Nava requests the opportunity to inspect, copy, and test, as necessary, all other documents and tangible objects, including photographs, books, papers, documents, alleged narcotics, fingerprint analyses, vehicles, or copies of portions thereof, that are material to the defense or intended for use in the government's case-in-chief or were obtained from or belong to Mr. Lopez-Nava. FED. R. CRIM. P. 16(a)(1)(E).  Specifically, Mr. Lopez-Nava requests **color copies** of all photographs in the government's possession of the alleged narcotics and the vehicle in which the narcotics were found.  If the prosecutor does not wish to make these copies, Mr. Lopez-Nava requests the opportunity to do so himself.

11.    <u>Expert Witnesses</u>.  Mr. Lopez-Nava requests the name, qualifications, and a written summary of the testimony of any person that the government intends to call as an expert witness during its case in chief. FED. R. CRIM. P. 16(a)(1)(G).  This summary should include a description of the witness' opinion(s), as well as the bases and the reasons for the opinion(s).  See <u>United States v. Duvall</u>, 272 F.3d 825 (7th Cir. 2001) (finding that government's written expert notice did not adequately summarize or describe police detective's testimony in drug prosecution where notice provided only a list of the general subject matters to be covered

and failed to identify what opinion the expert would offer on those subjects). This request includes, but is not limited to, disclosure of the qualifications of any government witness who will testify that he understands and/or any other foreign language that may have been used during the course of an interview with Mr. Lopez-Nava or any other witness.

Mr. Lopez-Nava requests the notice of expert testimony be provided at a minimum of *three weeks prior to trial* so that the defense can properly prepare to address and respond to this testimony, including obtaining its own expert and/or investigating the opinions, credentials of the government's expert and obtain a hearing in advance of trial to determine the admissibility of qualifications of any expert. See Kumho Tire Co. v. Carmichael, 526 U.S. 137, 119 S. Ct. 1167, 1176 (1999) (trial judge is "gatekeeper" and must determine, reliability and relevancy of expert testimony and such determinations may require "special briefing or other proceedings").

12.  Impeachment Evidence. Mr. Lopez-Nava requests any evidence that any prospective government witness has engaged in any criminal act whether or not resulting in a conviction and whether any witness has made a statement favorable to Mr. Lopez-Nava. See FED. R. EVID. 608, 609 and 613. Such evidence is discoverable under Brady, 373 U.S. 83. See United States v. Strifler, 851 F.2d 1197 (9th Cir. 1988) (witness' prior record); Thomas v. United States, 343 F.2d 49 (9th Cir. 1965) (evidence that detracts from a witness' credibility).

13.  Evidence of Criminal Investigation of Any Government Witness. Mr. Lopez-Nava requests any evidence that any prospective witness is under investigation by federal, state or local authorities for any criminal conduct. United States v. Chitty, 760 F.2d 425 (2d Cir. 1985).

14.  Evidence of Bias or Motive to Lie. Mr. Lopez-Nava requests any evidence that any prospective government witness is biased or prejudiced against Mr. Lopez-Nava, or has a motive to falsify or distort his or his testimony. Pennsylvania v. Ritchie, 480 U.S. 39 (1987); Strifler, 851 F.2d 1197.

15.  Evidence Affecting Perception, Recollection, Ability to Communicate, or Veracity. Mr. Lopez-Nava requests any evidence, including any medical or psychiatric report or evaluation, tending to show that any prospective witness' ability to perceive, remember, communicate, or tell the truth is impaired; and any evidence that a witness has ever used narcotics or other controlled substance, or has ever been an alcoholic. Strifler, 851 F.2d 1197; Chavis v. North Carolina, 637 F.2d 213, 224 (4th Cir. 1980).

1          16.     <u>Witness Addresses</u>.  Mr. Lopez-Nava requests the name and last known address of each prospective government witness.  <u>See</u> <u>United States v. Napue</u>, 834 F.2d 1311 (7th Cir. 1987); <u>United States v. Tucker</u>, 716 F.2d 576 (9th Cir. 1983) (failure to interview government witnesses by counsel is ineffective); <u>United States v. Cook</u>, 608 F.2d 1175, 1181 (9th Cir. 1979) (defense has equal right to talk to witnesses). Mr. Lopez-Nava also requests the name and last known address of every witness to the crime or crimes charged (or any of the overt acts committed in furtherance thereof) who will *not* be called as a government witness.  <u>United States v. Cadet</u>, 727 F.2d 1453 (9th Cir. 1984).

          17.     <u>Name of Witnesses Favorable to the Defendant</u>.  Mr. Lopez-Nava requests the name of any witness who made any arguably favorable statement concerning Mr. Lopez-Nava or who could not identify him or who was unsure of his identity or participation in the crime charged.  <u>Jackson v. Wainwright</u>, 390 F.2d 288 (5th Cir. 1968); <u>Chavis</u>, 637 F.2d at 223; <u>Jones v. Jago</u>, 575 F.2d 1164, 1168 (6th Cir. 1978); <u>Hudson v. Blackburn</u>, 601 F.2d 785 (5th Cir. 1979), <u>cert. denied</u>, 444 U.S. 1086 (1980).

          18.     <u>Statements Relevant to the Defense</u>.  Mr. Lopez-Nava requests disclosure of any statement that may be "relevant to any possible defense or contention" that he might assert.  <u>United States v. Bailleaux</u>, 685 F.2d 1105 (9th Cir. 1982).  This includes grand jury transcripts that are relevant to the defense motion to dismiss the indictment.

          19.     <u>Jencks Act Material</u>.  Mr. Lopez-Nava requests production in advance of the motion hearing or trial of all material, including dispatch tapes, that the government must produce pursuant to the Jencks Act, 18 U.S.C. § 3500 and FED. R. CRIM. P. 26.2.  A verbal acknowledgment that "rough" notes constitute an accurate account of the witness' interview is sufficient for the report or notes to qualify as a statement under section 3500(e)(1).  <u>Campbell v. United States</u>, 373 U.S. 487, 490-92 (1963); <u>see also</u> <u>United States v. Boshell</u>, 952 F.2d 1101 (9th Cir. 1991) (holding that interview notes constitutes Jencks material when an agent reviews notes with the subject of the interview); <u>see also</u> <u>United States v. Riley</u>, 189 F.3d 802, 806-08 (9th Cir. 1999).  Advance production will avoid the possibility of delay of the motion hearing or trial to allow Mr. Lopez-Nava to investigate the Jencks material.  Mr. Lopez-Nava requests pre-trial disclosure of such statements to avoid unnecessary recesses and delays and to allow defense counsel to prepare for, and use properly any Jencks statements during cross-examination.

1  20. Giglio Information. Pursuant to Giglio v. United States, 405 U.S. 150 (1972), Mr. Lopez-Nava requests all statements and/or promises, expressed or implied, made to any government witnesses, in exchange for their testimony in this case, and all other information that could arguably be used for the impeachment of any government witnesses.

21. Agreements Between the Government and Witnesses. Mr. Lopez-Nava requests discovery regarding any express or implicit promise, understanding, offer of immunity, of past, present, or future compensation, or any other kind of agreement or understanding, including any implicit understanding relating to criminal or civil income tax, forfeiture or fine liability, between any prospective government witness and the government (federal, state and/or local). This request also includes any discussion with a potential witness about or advice concerning any immigration benefits, any contemplated prosecution, or any possible plea bargain, even if no bargain was made or the advice not followed.

22. Informants and Cooperating Witnesses. Mr. Lopez-Nava requests disclosure of the names and addresses of all informants or cooperating witnesses used or to be used in this case, and in particular, disclosure of any informant who was a percipient witness in this case or otherwise participated in the crime charged against Mr. Lopez-Nava. The government must disclose the informant's identity and location, as well as disclose the existence of any other percipient witness unknown or unknowable to the defense. Roviaro v. United States, 353 U.S. 53, 61-62 (1957). The government must disclose any information derived from informants that exculpates or tends to exculpate Mr. Lopez-Nava.

23. Bias by Informants or Cooperating Witnesses. Mr. Lopez-Nava requests disclosure of any information indicating bias on the part of any informant or cooperating witness. Giglio v. United States, 405 U.S. 150 (1972). Such information would include what, if any, inducements, favors, payments or threats were made to the witness to secure cooperation with the authorities.

24. Personnel Records of Government Officers Involved in the Arrest. Mr. Lopez-Nava requests all citizen complaints and other related internal affairs documents involving any of the immigration officers or other law enforcement officers who were involved in the investigation, arrest and interrogation of Mr. Lopez-Nava. See Pitchess v. Superior Court, 11 Cal. 3d 531, 539 (1974). Because of the sensitive nature of these documents, defense counsel will be unable to procure them from any other source.

1   25. <u>Training of Relevant Law Enforcement Officers</u>.  Mr. Lopez-Nava requests copies of all written, videotaped or otherwise recorded policies or training instructions or manuals issued by all law enforcement agencies involved in the case (United States Customs Service, Border Patrol, INS, Department of Homeland Security, etc.) to their employees regarding:  (a) the handling of vehicles suspected to be transporting contraband across the port of entry; (b) the referral to secondary inspection of persons within those vehicles; (c) the detention of individuals within those vehicles; (d) the search of those vehicles and the occupants of those vehicles, including the proper means of obtaining consent to search and what constitutes consent to search; (e) the informing of suspects of their Constitutional rights; (f) the questioning of suspects and witnesses.  Mr. Lopez-Nava also requests all written or otherwise attainable information regarding the training of Customs agents at ports of entry in California to detect or discover narcotics in vehicles entering the United States, including any training offered to Border Patrol, INS, or officers of Homeland Security Department, by the DEA or other law enforcement agencies or individuals.

26. <u>Performance Goals and Policy Awards</u>.  Mr. Lopez-Nava requests disclosure of information regarding standards used for measuring, compensating or reprimanding the conduct of all law enforcement officers involved in the case (Customs, Border Patrol, INS, etc.) to the extent such information relates to the detection of contraband.  This request specifically includes information concerning performance goals, policy awards, and the standards used by Customs for commending, demoting, or promoting agents for their performance at the port of entry and their success or failure to detect illegal narcotics in general.

27. <u>Opportunity to Weigh, View and Photograph the Contraband</u>.  Mr. Lopez-Nava hereby requests an opportunity to view, photograph, and weigh the contraband allegedly confiscated in this case.

28. <u>DEA 7 Form</u>.  Mr. Lopez-Nava requests a copy of the DEA-7 form that should indicate the alleged weight and purity of the contraband in this case.

29. <u>TECS Reports</u>.  Mr. Lopez-Nava requests all TECS reports, including reports pertaining to all vehicle border crossings pertaining to the vehicle used in this case and any vehicles pertaining to Mr. Lopez-Nava.  **Any prior border crossings are considered "other acts" evidence that the government must produce before trial**. <u>Vega</u>, 188 F.3d at 1154.  Mr. Lopez-Nava also requests all TECS reports related to his personal border crossings (in this car, on foot, or in another car).

30. <u>Reports of Scientific Tests or Examinations</u>. Pursuant to FED. R. CRIM. P. 16(a)(1)(F), Mr. Lopez-Nava requests <u>all information</u> regarding all tests and examinations conducted upon the evidence in this case, including, but not limited to, any fingerprint testing done upon any evidence seized in this case, that is within the possession, custody, or control of the government, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the government, and that are material to the preparation of the defense or are intended for use by the government as evidence in chief at the trial.

31. <u>Narcotics Detector Dog Information</u>. Mr. Lopez-Nava moves for production of all discoverable information about any Narcotics Detector Dogs (NDDs) used in this case, including information regarding: (a) the qualifications of the NDDs and their handlers, (b) the training and experience of the NDDs and their handlers, (c) the government's procedures regarding the treatment, training and rewarding of the NDDs, (d) a detailed description of the exact method the NDDs in this case used to indicate an "alert" to contraband, and (e) the location of the NDD and the vehicle when the NDD alerted, and (f) the NDD's reliability.

32. <u>Residual Request</u>. Mr. Lopez-Nava intends by this discovery motion to invoke his rights to discovery to the fullest extent possible under the Federal Rules of Criminal Procedure and the Constitution and laws of the United States. This request specifically includes all subsections of Rule 16.

Mr. Lopez-Nava requests that the government provide him and his attorney with the above requested material at least three weeks before trial.

## II.

## MOTION FOR LEAVE TO FILE FURTHER MOTIONS

Defense counsel for Mr. Lopez-Nava has received only 31 pages of discovery. She believes that discovery is not yet complete. Furthermore, defense counsel has not yet had an opportunity to examine and re-weigh the drugs at issue in this case or to view the vehicle seized and Mr. Lopez-Nava's personal effects. Mr. Lopez-Nava respectfully requests leave to file further motions based on information obtained through the discovery process or as the need arises.

//
//
//

**III.**

**CONCLUSION**

For the foregoing reasons, Mr. Lopez-Nava respectfully requests that the Court grant the above motions.

Respectfully submitted,

DATED:    April 10, 2008         */s/ Shaffy Moeel*
                                 **SHAFFY MOEEL**
                                 Federal Defenders of San Diego, Inc.
                                 Attorneys for Lopez-Nava

**CERTIFICATE OF SERVICE**

Counsel for Defendant certifies that the foregoing pleading is true and accurate to the best of her information and belief, and that a copy of the foregoing document has been served this day upon:

**Stewart Young**
Assistant United States Attorney

**U S Attorney CR**
Efile.dkt.gc2@usdoj.gov

Dated: April 10, 2008

     /s/ *Shaffy Moeel*
SHAFFY MOEEL
Federal Defenders of San Diego, Inc.
225 Broadway, Suite 900
San Diego, CA 92101-5030
(619) 234-8467  (tel)
(619) 687-2666  (fax)
e-mail: Shaffy_Moeel@fd.org